721 So.2d 1038 (1998)
STATE of Louisiana
v.
Clinton DRONET, DefendantAppellant.
No. CR97-991.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1998.
*1039 Michael Harson, Lafayette, Edward B. Broussard, Asst. DA, for State.
Edward K. Bauman, Lake Charles, for Clinton Dronet.
Clinton Dronet, pro se.
Before WOODARD, PETERS and GREMILLION, JJ.
WOODARD, Judge.
This is an armed robbery case. On August 14, 1994, Clinton Dronet (the defendant) entered a store in Abbeville, Louisiana and robbed the owner, Mr. Ewell Vincent (Mr. Vincent), of approximately $75.00 and some food stamps. During the robbery, the defendant stabbed Mr. Vincent several times, who recovered from the wounds. The trial court convicted the defendant of armed robbery. He appeals his conviction and sentence. We affirm the conviction and remand to the trial court for resentencing.

FACTS
On August 14, 1994, at about 5:00 p.m., Mr. Vincent was closing his market in Abbeville, Louisiana. As Mr. Vincent was exiting the store, a car sped to a stop in front of the establishment and a young man jumped out and ran toward Mr. Vincent. As the two men began to struggle, the assailant attacked Mr. Vincent with a lock-blade knife. They entered the store, where the fight continued, and the assailant stole a bag containing approximately $75.00 in cash and a quantity of food stamps. The defendant fled and went to Houston, Texas. With the cooperation of Texas officials, the defendant was apprehended and returned to Louisiana for trial.
On January 25, 1995, Clinton Wade Dronet was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. On April 12, 1995, the state moved to amend this bill to reflect the proper date of the offense as August 14, 1994, instead of 1995, as appeared on the original bill filed. Defendant's trial commenced on December 4, 1996. On the same day, a suppression hearing was conducted, but the motion was held over until the defense's key witness could testify. The trial commenced. When the witness became available, the trial was interrupted to continue the hearing on the motion. Ultimately, the motion was denied and reasserted later. Again, it was denied.
Subsequently, the defendant was convicted by an 11-1 jury verdict of armed robbery. On February 28, 1997, he was sentenced to forty years at hard labor without benefit of probation, parole, or suspension of sentence. He did not file a motion for reconsideration of his sentence, but nonetheless appeals both his conviction and sentence.

ASSIGNMENTS OF ERROR
Defendant alleges the following assignments of error:
1. The evidence presented at trial, when viewed in a light most favorable to the prosecution, was insufficient to sustain a verdict of guilty as charged.
2. The trial court erred in denying defendant's Motion to Suppress.
3. Defendant's sentence was unconstitutionally excessive, or in the alternative, trial counsel was ineffective for failing to file a Motion to Reconsider Sentence.

LAW

ERRORS PATENT
In accordance with La.Code Crim. P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one error patent.
*1040 A review of the record reveals that the trial court sentenced the defendant immediately after denying his Motion for New Trial. La.Code Crim.P. art. 873 requires that there be a twenty-four hour delay between the denial of a motion for new trial and the imposition of sentence. Subsequent to the denial of the defendant's motion, the following exchange took place:
THE COURT: Okay. So now we're here for sentencing. I'm ready to hear whatever evidence. I have shared the pre-sentence investigation report with defense, and I am prepared to hear any evidence of extenuating circumstances, mitigating circumstances, on this issue.
[Defense Counsel]: Your Honor, will we be expecting a ruling on the Brady issue in the near future?
THE COURT: Well, Brady talks about exculpatory evidence. That is denied as well. Okay.
[Defense Counsel]: Please note my objection for the record.
THE COURT: Your objection is noted for the record. All right. So ordered.
[Defense Counsel]: We're ready.
The trial court then proceeded with resentencing. In State v. Dauzat, 590 So.2d 768 (La.App. 3 Cir.1991), writ denied, 598 So.2d 355 (La.1992), this court stated:
Generally, this error, while patent, is not reversible unless the defendant is prejudiced by the lack of a sentencing delay. However, the Louisiana Supreme Court's most recent pronouncement on this issue has required a strict application of Article 873, particularly where the defendant challenges the penalty imposed. State v. Augustine, 555 So.2d 1331 (La.1990).
Id. at 775 (citations omitted). Although this court could not find any prejudice as a result of the trial court's failure to observe the delay in sentencing, this court remanded for resentencing, since the defendant challenged his sentence on appeal. Id. at 775-76. See also State v. Williams, 96-37 (La.App. 3 Cir. 6/26/96); 677 So.2d 692. Likewise, the defendant in the present case challenged his sentence on appeal. The fact that his defense counsel announced to the court, "We're ready," for sentencing could not constitute a waiver of the provisions of La.Code Crim.P. art. 873. Its provisions must be strictly applied.
Therefore, the sentence is vacated and the case remanded for resentencing. In accordance with the provisions of La.Code Crim.P. art 930.8, the defendant shall be informed that he has three years from the date of his conviction to file an application for postconviction relief.

SUFFICIENCY OF THE EVIDENCE
By this assignment, the defendant contends that the evidence against him at trial was insufficient to convict him of each element of the crime of armed robbery beyond a reasonable doubt.
La.R.S. 14:64(A) provides in pertinent part:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
In State v. McCartney, 96-58 (La. App. 3 Cir. 10/9/96); 684 So.2d 416, we recently stated:
In order to find defendant was engaged in an armed robbery, the state would need to prove under La.R.S. 14:64 that:
1. Defendant intentionally took something of value belonging to another;
2. The thing was taken from the possession of or immediate control of another;
3. Defendant used force or intimidation in order to accomplish the taking; and
4. Defendant was armed with a dangerous weapon.
Id. at 429. In this case, the testimony supports these elements. Defendant's contention is essentially a matter of credibility. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983), held that it "is the role of the fact-finder to weigh the respective credibilities of the witnesses, and this court will not second-guess the credibility determinations of the trier of fact beyond our sufficiency *1041 evaluations under the Jackson standard of review." In that vein, the trier of fact may accept or reject, in whole or in part, the testimony of any witnesseven one. State v. Jeansonne, 580 So.2d 1010 (La.App. 3 Cir.), writ denied, 584 So.2d 1170 (La.1991); see also State v. Henry, 95-428 (La.App. 3 Cir. 10/4/95); 663 So.2d 309, writ denied, 96-0681 (La.5/16/97); 693 So.2d 793.
The defendant attacked Mr. Vincent in front of his market in Abbeville, Louisiana. The assailant used a lock blade knife, struggled with Mr. Vincent, and stole a bag containing approximately $75.00 in cash and an undetermined quantity of food stamps. The food stamps were marked with the store stamp. The bag containing the food stamps, as well as a receipt book and a $1.00 bill, was recovered on the ground just outside of Abbeville. The receipt book was from Mr. Vincent's store. There were no readable prints on the recovered items. The knife used in the attack was never found.
Mr. Vincent gave a general description of his attacker to police and also noted that the attacker drove an older car, possibly a 1960's model, which was possibly off-white or "tannish" in color, with no rear license plate. At the trial, he testified that he identified the defendant during a photographic lineup. Although, the police composite drawing, based on witness descriptions, did not match that of his attacker, he identified the defendant in open court as his attacker.
Also testifying at the defendant's trial was Mr. John Warren who met the defendant in August of 1994, while living in Texas. Mr. Warren testified that the defendant identified himself as "Darrell Hebert," that the defendant told him that he had robbed a meat market in Abbeville, Louisiana and that a knife was used in the attack. He also testified that he subsequently met a girl named "Angie," who was revealed to be defendant's girlfriend, when she arrived in San Antonio to pick up a maroon four-door sedan from the defendant. While in Houston, Mr. Warren had overheard him talking to "Angie" on the telephone.
Some time after Mr. Warren was with the defendant in Texas, Mr. Warren was arrested on an outstanding warrant for unauthorized use of a movable. He also had previous convictions for escape and forgery. Mr. Warren gave his statement regarding the defendant after being arrested on the outstanding warrant. Mr. Warren testified that he did not want to see the defendant convicted and that he received no favorable plea agreement or other consideration in exchange for his testimony.
Mr. Arnold Trahan, who owned "BB's Auto Sales", testified that he sold a 1968 four-door Mercury Montego to the defendant on August 10, 1994. At the time of the sale, the vehicle did not have a rear license plate, only a temporary tag on the back window of the vehicle. Mr. Trahan was unable to recall the color of the vehicle. The former owner of the vehicle, Mr. Henry Lormand, testified that the vehicle was a metallic silver in color.
Officer Eddie Conner, of the Abbeville Police Department, testified that he was present when Mr. Vincent picked the defendant out of a photographic lineup. The officer stated that there was no hesitation on the part of Mr. Vincent, who commented that the defendant's hair was longer at the time of the attack. Officer David Hardy, also of the Abbeville Police Department, was also present when Mr. Vincent picked the defendant from the photographic lineup and noted that Mr. Vincent commented that the defendant's hair was different from that in the photo.
Officer Anthony Harrington, a police officer in Abbeville, testified that he investigated a traffic accident on September 25, 1994 and that a light tan vehicle belonging to the defendant was involved. The officer was unaware that the defendant, who was the driver of the car, was wanted for questioning at that time in connection with the robbery of Mr. Vincent. The officer remembered the car very well because of the circumstances of the accident, in which the defendant stated that he was approached by a man who tried to rob him, and that the vehicle hit a tree during defendant's escape attempt.
Mr. Robert Baldridge, a resident of Abbeville, stated that he saw the light-colored four door vehicle, which failed to halt at a neighborhood stop sign, speeding away from Mr. Vincent's market at the time of the robbery. *1042 Mr. Baldridge gave a description of the driver, whom he saw only briefly, to local authorities. He could remember little of the description at the time of trial. A police sketch artist drew a composite from Mr. Baldridge's description.
Sergeant Steve Broussard, of the Abbeville Police Department, testified that, with the cooperation of Ms. Duhon, he recorded a conversation between the defendant and his girlfriend, Ms. Angela Duhon. Officer Broussard was the person who completed the composite drawing of the suspect and also utilized information from Mr. Vincent to complete a second drawing.
Lieutenant G.A. Finkleman, of the Spring Valley Police Department in Houston, Texas, testified that he arrested Mr. Warren on an outstanding warrant on January 17, 1995 and obtained information connecting the defendant to the robbery of Mr. Vincent during the interrogation. No immunity agreement was offered to Warren to obtain the statement implicating the defendant. Lieutenant Finkleman learned that the defendant and Warren were together in Texas during his investigation of the forgery case. The complainant knew the defendant as Darrel Hebert. Utilizing a computer check, the officer learned that this was one of the defendant's aliases and that the defendant was wanted for questioning in connection with the Abbeville robbery. Warren's statement was faxed to the Abbeville Police Department.
Ms. Duhon, defendant's girlfriend and the mother of his child, gave conflicting testimony during his trial. She stated that she still loved him in 1995; that she could not recall communications following his arrest but that she may have written to him expressing that she was still interested in marrying him; that she spoke to him on the telephone at some time after the robbery; and that he, both, admitted robbing the market and later denied any involvement.
Ms. Duhon gave a statement to the police on October 18, 1994, detailing the information she received during the phone conversation with the defendant, however, at trial, she maintained that she did so as a result of "threats" and that many of the facts in her written statement to authorities were obtained from news accounts of the robbery. She testified that she had spent time with the defendant in New Iberia following the robbery but denied that she had traveled to Texas to meet with him or to pick up her car from him. She testified that she had approached the police with the information regarding the defendant in order to receive favorable treatment regarding a pending driving while intoxicated (DWI) charge and that she was incarcerated pending disposition of the that charge when she agreed, in the expectation that it would be dropped, to permit police to tape a telephone conversation between her and the defendant. She further stated that she informed her sister of the incriminating conversation with the defendant shortly after it took place. For her cooperation in testifying at the defendant's trial, Ms. Duhon received immunity from any criminal charges which may have been filed in connection with her efforts to aid the defendant following the robbery. The defendant was finally located in Texas as a result of information obtained in the taped phone conversation.
Ms. Duhon further testified that she owned a maroon four door automobile shortly after the robbery and reported it stolen to the New Iberia Police Department in late 1994 or early 1995. Detective Rusty Herring, of the New Iberia Police Department, testified that the department did not have any reports of a stolen vehicle from Ms. Duhon during the period in question.
Ms. Duhon continued to speak to the defendant after he was arrested, including several times shortly before trial. She further testified that, despite the evidence and her own statements to the contrary, she actually hated him for getting her pregnant. She penned a letter prior to the start of trial to his attorney, stating that she was coerced into cooperating with authorities.
Ms. Melissa Boyer, Ms. Duhon' sister, testified that Ms. Duhon told her of the conversation in which the defendant admitted that he had robbed the market. She stated that she was not aware that Ms. Duhon was upset about being pregnant with his child.
*1043 Detective Hardy testified that Ms. Duhon initiated the contact with Officer Broussard, that she was not threatened in any manner in order to secure her cooperation, and that she did not appear disturbed or under coercion at any time. Officer Broussard testified that he told Ms. Duhon that she might face charges as an accessory after the fact to the defendant's crime and that the penalty for that offense was half of the principal offense. Ms. Duhon received help from the police in getting her bond reduced on the DWI charge in exchange for permitting the taping.
Ms. Angela Arceneaux testified that she became aware that the defendant was going to call her house in an attempt to talk to Ms. Duhon and that she approached police officers and informed them of the impending call in an attempt to aid Ms. Duhon, who was in jail on the DWI charge. She urged Ms. Duhon to cooperate with the police.
The defendant called Ms. Jane Bourriague, the head bookkeeper at the Bank of Erath, who testified that he had an account with the bank which was opened with a $4,000.00 deposit on August 4, 1994. This account was opened ten days before the robbery. By a series of withdrawals, the account was depleted and closed on August 19, 1994. The defendant elicited this testimony to show he did not need the money.
The defendant's mother, Ms. Mary Dronet, testified that she, the defendant, and the defendant's son went fishing on the day of the robbery. She stated that they left about 9:30 a.m. and returned about 6:30 p.m., that they ate dinner together, and that both stayed at her house all night.
Testifying in his own defense at the trial, the defendant also stated that the three went fishing on the day of the robbery, returned late from fishing, and spent the evening at their mother's house. He testified that Ms. Duhon called him some time in November of 1994, while he was in Carencro, Louisiana, and informed him that he was wanted in connection with the robbery, that she wanted him to flee the area to avoid prosecution, and that he ultimately did so in order to give the authorities time to find the "original robber," at which time he would return. The defendant stated that he did not confess any involvement in the crime to Mr. Warren but only told him that he was wanted in connection with the offense. He acknowledged that he fled to Texas in October or November of 1994, and somehow acquired the use of Ms. Duhon's vehicle in Texas. He could not recall how he came to be in possession of the vehicle after he arrived in Texas. He stated that he returned occasionally to Louisiana to visit Ms. Duhon while he was in hiding, that the money in the bank account was from a civil settlement he had recently received, and that he planned to use part of it to rent a house in New Iberia, in which he expected to live with Ms. Duhon.
At the conclusion of the testimony, the jury found the defendant guilty as charged.
The state introduced sufficient evidence to convict him of armed robbery. The state proved that items of value were taken from the victim without his consent while the defendant was armed with a dangerous weapon. The victim identified the defendant in court as the attacker. The jury acted reasonably in choosing to believe that the defendant confessed his involvement in the robbery to Mr. Warren and admitted culpability to Ms. Duhon. The jury acted rationally in disregarding the testimony of the defendant and his mother and in rejecting Ms. Duhon's contradictory testimony. Accordingly, this contention by the defendant is without merit.

MOTION TO SUPPRESS
By this assignment, the defendant contends that the district court erred when it did not suppress the evidence consisting of taped conversations between him and his girlfriend and that the taped conversations were not admissible because the party purporting to consent to the taping, pursuant to La.R.S. 15:1301, et seq., did not do so voluntarily. On the contrary, this party, who was his girlfriend, Ms. Duhon, testified that she taped the conversation predicated on being promised release from jail and favorable disposition on her charge of accessory after the fact. However, she further alleged that the state had threatened to take away her daughter. This error, like the first, involves credibility determinations. As such, the trial *1044 court's determinations should not be disturbed absent a showing of clear error.
Police officers testified that they did not coerce Ms. Duhon into giving permission for the taping. They stated that they helped her obtain a bail reduction, facilitated her release from custody, and further told her that, if charged as an accessory, she faced prolonged incarceration. In exchange for her later cooperation at trial, Ms. Duhon was granted immunity from prosecution on any accessory charge or any other possible charges stemming from her involvement with the defendant following the robbery.
There is no evidence that such accommodation was offered in connection with the taping. While an actual promise to have charges reduced in exchange for a statement from a witness charged with criminal activity would render suppression of that statement likely, statements by police that they will "do what they can" or that "things will go easier" on a defendant if he cooperates do not negate the voluntary nature of a confession. See State v. Gaspard, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. At the hearing on the motion to suppress in the instant case, it was clearly stated by Officer Hardy that no promises were made to Ms. Duhon in order to secure her permission to allow the taping. The officers offered to attempt to aid Ms. Duhon in her effort to have her bond on the DWI charge reduced. Officer Broussard specifically told her that he would be unable to have the charges dropped, even if she agreed to cooperate.
The defendant failed to offer any proof that Ms. Duhon, who is still involved with him, was coerced in any manner into permitting the taping. In fact, she entered into a favorable arrangement with the police and prosecutor from which she benefitted substantially. Further, until shortly before defendant's trial, she never indicated to anyone that she felt coerced or threatened by authorities or that she was unsatisfied with the arrangement she made with the prosecution. Accordingly, the trial court did not err in denying the defendant's motion to suppress. This contention by the defendant is without merit.

EXCESSIVE SENTENCE
By reason of our decision to vacate the sentence and remand this matter for resentencing, it is unnecessary to address this issue.

CONCLUSION
The state introduced sufficient evidence to convict the defendant of the charged offense. The state proved each element required to sustain a conviction for armed robbery, and the jury acted rationally in concluding that the evidence adduced at trial proved that the defendant was the person who attacked and robbed Mr. Vincent.
Further, the trial court did not err in denying the defendant's motion to suppress evidence, as he failed to prove that Ms. Duhon did not permit the taping of the phone conversation of her own free will. Evidence shows that she voluntarily cooperated with the state in exchange for favorable treatment regarding a DWI case and in order to obtain immunity for possible prosecution as an accessory after the fact.
The defendant's sentence is set aside because the trial court failed to comply with La.Code Crim.P. art. 873. This matter is remanded for resentencing. Upon resentencing, the district court shall inform the defendant of the provisions of La.Code Crim.P. art. 930.8.
THE CONVICTION IS AFFIRMED. THE SENTENCE IS VACATED, AND THE CASE IS REMANDED WITH INSTRUCTIONS.
GREMILLION, J., dissents in part and assigns reasons.
GREMILLION, Judge, dissenting in part.
While I am cognizant of the requirement that La.Code Crim.P. art. 873 must be interpreted strictly, I respectfully disagree with the majority and would find that Defendant's statement, "We're ready," after the trial court announced, "We're here for sentencing" was an implied waiver of the twentyfour hour time delay setforth in the article. See State v. Diaz, 93-1309 (La.App. 3 Cir. *1045 4/6/94); 635 So.2d 499, writ denied, 94-1189 (La.9/16/94); 642 So.2d 191 and State v. Lindsey, 583 So.2d 1200 (La.App. 1 Cir.1991), writ denied, 590 So.2d 588 (La.1992).