820 So.2d 1286 (2002)
STATE of Louisiana
v.
Rocky James JASON.
No. 01-1428.
Court of Appeal of Louisiana, Third Circuit.
July 10, 2002.
*1287 Elbert Lee Guillory, Opelousas, LA, for Defendant/Appellant Rocky James Jason.
Rick Bryant, District Attorney, Lake Charles, LA, for Appellee State of Louisiana.
Court composed of BILLIE COLOMBARO WOODARD, OSWALD A. DECUIR, and JIMMIE C. PETERS, Judges.
PETERS, J.
The defendant, Rocky James Jason, was originally charged by grand jury indictment with one count of attempted aggravated rape, a violation of La.R.S. 14:27 and La.R.S. 14:42; one count of aggravated oral sexual battery, a violation of La.R.S. 14:43.4[1]; and one count of aggravated burglary, a violation of La.R.S. 14:60. After a jury trial, which began on May 8, 2000, the jury found the defendant guilty of aggravated burglary, but returned responsive verdicts on the other two counts. On the attempted aggravated rape charge, the jury found the defendant guilty of the responsive charge of attempted forcible rape, a violation of La.R.S. 14:27 and La. R.S. 14:42.1, and on the aggravated oral sexual battery charge, the jury found the defendant guilty of the responsive charge of oral sexual battery, a violation of La. R.S. 14:43.3. On May 26, 2000, the state filed a bill of information charging the defendant as an habitual offender pursuant to La.R.S. 15:529.1.
On June 23, 2000, the defendant filed the first of two motions for a new trial, asserting that he had discovered new and material evidence since his trial. In this motion, he asserted that he had available new evidence establishing that "the DNA of the seminal fluid present at the [crime] scene was not [his]" and that two witnesses had come forward to establish that *1288 he was somewhere other than the crime scene at the time of the offense.
Before the trial court ruled on the June 23, 2000 motion, the defendant filed a second motion for new trial wherein he again argued that the DNA evidence and the newly discovered witnesses would provide evidence that he was not at the scene of the crime at the time of the offenses. In this motion, he identified three witnesses by name and further asserted that "[r]ecent psychological testing reflects the defendant to be mentally handicapped." He added the assertion that injustice would result if the verdicts were allowed to stand. In support of his mental incapacity assertion, the defendant attached a copy of an October 5, 2000 report from Dr. Jeff Sandoz, an Opelousas, Louisiana licensed professional counselor. In a separate pleading, the defendant requested that the trial court allow him to enter a plea of not guilty by reason of insanity.
The trial court considered and rejected all of the pending motions at a hearing held on January 16, 2001. Immediately thereafter, the trial court held a hearing on the state's motion to have the defendant adjudicated an habitual offender. After presentation of the evidence on this issue, the trial court adjudicated the defendant an habitual offender and sentenced him on the three convictions.
On the attempted forcible rape conviction, the trial court sentenced the defendant to life in prison without the benefit of parole, probation, or suspension of sentence. On the oral sexual battery conviction, the trial court sentenced the defendant to serve fifteen years at hard labor without the benefit of parole, probation, or suspension of sentence, and ordered that the sentence run consecutive to the life sentence. On the aggravated burglary conviction, the trial court sentenced the defendant to serve thirty years at hard labor, with the sentence to run concurrently with the other two sentences.

DISCUSSION OF THE RECORD
On November 28, 1998, at approximately 5:00 a.m., the victim of these offenses awoke to a loud noise in her Lake Charles home. When she attempted to investigate the source of the noise, she was confronted by a man who had broken into her home. The man forced her back into her bedroom, attempted to rape her, and then forced the victim to allow him to place his genitals in her mouth. Before ejaculating, the assailant removed his genitals from the victim's mouth and fled the scene. In the initial police investigation, the victim identified the defendant as her assailant. Additionally, two days after the incident, she picked the defendant from a photographic lineup, and, at trial, she again identified the defendant as the individual who committed the offenses.

OPINION
On appeal, the defendant questions the trial court's rulings on his post-conviction motions as well as the sentence imposed. For the following reasons, we affirm the convictions, but vacate the sentences, and remand the matter to the trial court for resentencing.

Errors Patent
Louisiana Code of Criminal Procedure Article 920(2) requires that we review all appeals for errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." In performing this review, we find one error patent which requires that we vacate the sentences imposed on the defendant and remand the matter for resentencing.
The trial court sentenced the defendant the same day it denied his motions *1289 for a new trial. Louisiana Code of Criminal Procedure Article 873 prohibits the trial court, absent a waiver by the defendant, from imposing sentence until at least twenty-four hours after it has denied a motion for new trial. Because the defendant challenged his sentences on appeal, the error cannot be considered harmless. State v. Augustine, 555 So.2d 1331 (La. 1990); State v. Dronet, 97-991 (La.App. 3 Cir. 11/4/98), 721 So.2d 1038. Thus, we find it necessary to vacate the defendant's sentences and remand this matter to the trial court for re-sentencing.

Assignment of Error No. 1
At the January 16, 2001 hearing, the defendant's counsel requested that the trial court appoint a sanity commission to evaluate the defendant. The trial court rejected this request, and, in his first assignment of error, the defendant asserts that the trial court erred in doing so.
Dr. Sandoz did not testify at the January 16, 2001 hearing. Instead, the defendant relied entirely on Dr. Sandoz's October 5, 2000 report wherein Dr. Sandoz diagnosed the defendant as suffering from a "developmental disability which manifests itself in both intellectual and behavioral areas." The doctor, who had interviewed the defendant and examined the defendant's school records, noted in his report that the defendant's school records categorized him as mildly mentally handicapped with a speech impediment. He concluded that the defendant "does not have sufficient intellectual capability to understand many of the demands placed upon him by society."
The trial court acknowledged that the defendant might suffer from "some mild mental handicap." However, the trial court recalled that at trial the defendant clearly consulted with his attorney, testified on his own behalf, and "presented a consistent recital of the facts as he saw them." Based on its review of Dr. Sandoz's report as well as observations at trial, the trial court concluded that there existed no need for a sanity commission.
Louisiana Code of Criminal Procedure Article 641 provides that "[m]ental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in this defense." The issue may be raised at any time during the proceedings, even after conviction. State v. Cyriak, 96-661 (La.App. 3 Cir. 11/6/96), 684 So.2d 42. When raised, "there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed." La.Code Crim.P. art. 642. Additionally, when the issue is raised, the trial court "shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed." La.Code Crim.P. art. 643 (emphasis added).
The defendant has the burden of proving by a clear preponderance of the evidence reasonable grounds for the trial judge to believe he is mentally deficient. State v. Vincent, 338 So.2d 1376 (La.1976). "The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant." State v. Lott, 574 So.2d 417, 424 (La.App. 2 Cir. 1991), writ denied, 580 So.2d 666 (La. 1991), affirmed after remand, 27,849 (La.App. 2 Cir. 4/3/96); 671 So.2d 1182.
Cyriak, 684 So.2d at 47.
Furthermore, "[a] trial judge's determination as to a defendant's mental capacity to proceed is entitled to great weight and will not be disturbed on appeal absent *1290 an abuse of discretion." Id. In State v. Morris, 340 So.2d 195, 203 (La.1976), the supreme court noted:
Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity.... It is only when the retardation, defect or disease, alone or in combination, is so severe that an accused is unable to understand the proceedings against him and to assist in his defense that an accused is, within the contemplation of law, presently insane and unable to stand trial.
There exists no evidence in this matter that the defendant suffers from a mental illness. Additionally, Dr. Sandoz did not state that the defendant was incapable of assisting in his defense, and the defendant points to nothing in the trial record that would suggest that he was unable to assist his counsel. In fact, as suggested by the trial court, the evidence is contrary to that assertion. Thus, we find no merit in this assignment of error.

Assignment of Error No. 2
In this assignment of error, the defendant asserts that the trial court erred in denying his motions for a new trial. In asserting this error, he raises three grounds for the grant of a new trial: (1) that DNA testing of the sperm found in the victim's vagina established that it was not his sperm; (2) that three newly discovered alibi witnesses would establish that he could not have been at the crime scene at the time of the offenses; and, (3) that evidence of the defendant's mental handicap should have been presented to the jury.
The grounds for granting a new trial are found in La.Code Crim.P. art. 851, which provides as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

DNA Testing
During their initial investigation, the police officers collected the defendant's boxer shorts, the victim's clothing, two bed sheets from her home, and a rape kit taken at Lake Charles Memorial Hospital during her examination. The officers forwarded these items to the Southwest Louisiana Crime Lab (Crime Lab) for evaluation. However, despite the defendant's assertion to the contrary, the trial record contains no mention of semen analysis or of DNA analysis.
*1291 Sergeant Brian Mattison of the Lake Charles Police Department testified that, when he collected the two sheets on the morning of the offenses, he examined the sheets for wet spots which might indicate semen stains, but found none. The only observable stains, according to the officer, were blood stains. Additionally, Shelly Guillory, the registered nurse who collected the samples for the rape kit at Lake Charles Memorial Hospital, testified that, because the assailant did not ejaculate, she would not expect to find semen in the collected samples.
The only mention of semen stains is found in the Crime Lab's certified report. That report mentions that one of the sheets "demonstrated the presence of seminal stains." However, the report further stated that any additional analysis of these stains would require comparison samples from the defendant. At trial, Tracie Lee LeGros, an expert serologist with the Crime Lab, made no mention of any semen evaluation. She limited her testimony to her examination of the blood found on the sheets and a pair of boxer shorts supplied to her by law enforcement personnel. Her testing revealed that the blood on the sheets was consistent with the blood on the victim and that the blood on the boxer shorts was consistent with the blood of the defendant.
At the hearing on the motions for new trial, the defendant presented no evidence on this issue, nor did he suggest that this might be newly discovered evidence. Thus, the only plausible basis for this argument is that the verdict is contrary to the law and evidence. La.Code Crim.P. art. 851(A). We find that this argument is insufficient and, thus, lacks merit.

Newly Discovered Alibi Witnesses
The supreme court recently discussed the standard of review applicable to a motion for new trial based on newly discovered evidence and stated the following:
A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at the trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Hammons, 597 So.2d 990, 994 (La. 1992); State v. Knapper, 555 So.2d 1335, 1339 (La.1990); State v. Prudholm, 446 So.2d 729, 735 (La.1984). In ruling on the motion, "[t]he trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment." Prudholm, 446 So.2d at 736.
State v. Cavalier, 96-3052, 97-0103, p. 3 (La.10/31/97), 701 So.2d 949, 951.
At the hearing on the motions for new trial, the defendant identified three witnesses Rhonda Hall, Kevin Tanner, and a woman named Michelleas individuals who could testify that the defendant was somewhere other than the scene of the crime at the time the offenses were committed. However, the defendant's counsel simply argued that these witnesses would present testimony helpful to the defendant, but presented no proof of that assertion. In fact, the defendant's counsel admitted that he had interviewed only one of the witnesses, Rhonda Hall, and that she would testify that the defendant had been with her earlier in the evening.
If a motion for new trial is based on newly discovered evidence, it must contain *1292 the following allegations of fact sworn to by the defendant or his counsel:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;
(2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
La.Code Crim.P. art. 854.
At trial, the defendant testified extensively concerning his association with Kevin Tanner on the night preceding the offences; thus, the existence of these three "new" witnesses is certainly not newly discovered evidence with the definition of La.Code Crim.P. art. 851(3). Additionally, the defendant asserted only that Rhonda Hall was with the defendant earlier in the evening. This presented no alibi for the early morning hours during which the criminal activity occurred. We do not find that the trial court erred in rejecting the motions for new trial based on this argument.

The Defendant's Mental Condition
The defendant did not argue this assertion at the hearing on the motions for new trial. Instead, he limited his argument on this issue to his request for a sanity commission. We find that the defendant has waived his argument on this issue. Additionally, the defendant did not assert that this issue constituted newly discovered evidence, but argued that the defendant's mental condition required a new trial to serve the ends of justice. This is an argument pursuant to La.Code Crim.P. art. 851(5) which we may not review on appeal. State v. Prudhomme, 532 So.2d 234 (La.App. 3 Cir.1988), writ denied, 541 So.2d 871 (La.1989).
For the foregoing reasons, we find no merit in the defendant's second assignment of error.

Assignment of Error No. 3
In this assignment, the defendant asserts that his sentences are excessive. We find it unnecessary to consider this assignment of error in light of the fact that we have vacated the sentences and remanded for re-sentencing.

Assignment of Error No. 4
In his final assignment of error, the defendant asserts that he was required to appear before the jury in shackles and handcuffs during the trial and before the jury rendered its verdict. He argues that this event "significantly prejudiced his posture before the jury" and warranted the grant of a new trial.
We have examined the record and find no evidence of this event. Additionally, assuming it did occur, the defendant failed to properly preserve the issue for review by contemporaneous objection. La.Code Crim.P. art. 841. Thus, we find no merit in this assignment.

DISPOSITION
For the foregoing reasons, we affirm the defendant's convictions, vacate his sentences, and remand this matter to the trial court for re-sentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED; CASE REMANDED.
WOODARD, J., concurs and assigns written reasons.
WOODARD, J., concurring.
I respectfully concur from the majority's opinion.
*1293 I agree with the majority opinion except for its apparent interpretation of the supreme court's statement in State v. Morris. The majority quotes the court as saying:
Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity.... It is only when the retardation, defect or disease, alone or in combination, is so severe that an accused is unable to understand the proceedings against him and to assist in his defense that an accused is, within the contemplation of law, presently insane and unable to stand trial.
(Emphasis added.)
Then, the majority concludes that "There exists no evidence in this matter that the defendant suffers from a mental illness." For clarity, I submit that it would be more in keeping with the supreme court's principle to have included "nor is there evidence of mental retardation severe enough to impair the Defendant's ability to understand or assist," since there is evidence that the Defendant sub judice is mentally retarded, and the supreme court included retardation, a deficiency of intelligence, as a possible factor to consider. The problem for the instant Defendant is that his mental retardation was not so severe as to deprive him of understanding.
NOTES
[1] We note that this statute was repealed by Acts 2001, No. 301, § 2.