684 So.2d 42 (1996)
STATE of Louisiana, PlaintiffAppellee,
v.
Daniel Ray CYRIAK, DefendantAppellant.
No. CR96-661.
Court of Appeal of Louisiana, Third Circuit.
November 6, 1996.
*44 Charles F. Wagner, District Attorney, for the State.
John Michael Lawrence, New Orleans, for Daniel Ray Cyriak.
Before THIBODEAUX, COOKS, and GREMILLION, JJ.
THIBODEAUX, Judge.
The defendant, Daniel Ray Cyriak, was convicted of attempted indecent behavior with a juvenile in violation of La.R.S. 14:81 and La.R.S. 14:27 and sentenced to three years and six months at hard labor. A habitual offender bill was filed by the state. After finding the defendant to be a third felony offender, the court vacated Mr. Cyriak's sentence and imposed a seven year sentence at hard labor, to be served without benefit of parole, probation, or suspension of sentence.
The defendant sought to delay the habitual offender proceedings and sought the appointment of a sanity commission. That request was denied.
The defendant now appeals his conviction and sentence, assigning twelve assignments of error. Assignments of error 3, 5, 6, and 8-11 are abandoned; 7 and 12 will be discussed together. We affirm his conviction but vacate his sentence and remand to the trial court to make a determination of whether reasonable grounds exist to doubt Mr. Cyriak's mental capacity to proceed. If none exists, the trial court may then proceed with the sentencing of the defendant.

FACTS
On September 15, 1994, Gwendolyn Chew had a party at her residence in Alexandria, Louisiana. The victim, eleven years old at the time, was spending the night at Ms. Chew's and was sleeping in a back bedroom with Ms. Chew's daughters, Allison and Chantelle. The victim testified that the defendant entered the bedroom where she was sleeping and put his hands under her covers and began fondling her buttocks. The victim testified that the defendant threatened to kill her if she screamed. Ms. Chew's daughter, Allison, corroborated the victim's story. Larry Smith testified that he discovered the defendant standing in the back bedroom between the beds in which the girls were sleeping and told him to leave. Ms. Chew heard the victim scream and ran to the bedroom. The victim informed Ms. Chew of what had happened. The defendant eventually left Ms. Chew's residence and the police were later summoned.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends the trial court erred in denying defendant's challenge for cause as to the following prospective jurors: Patricia Tillett, Lee McKeithen, Susan Duncan, Phillip Bordelon, Jr., Peggy Bordelon and Warren Hill Iles.
Although the defendant mentions the names of several prospective jurors, the defendant discusses only the trial court's denial of his challenge for cause concerning prospective juror, Warren Hill Iles.
During the jury selection process, the defendant exercised all six peremptory challenges. Defendant requested a challenge for cause as to prospective juror Warren Iles as Mr. Iles had a son currently facing charges in the Ninth Judicial District. The court denied defendant's request to which the defendant objected.
The defendant asserts there is the possibility that Mr. Iles' concern about his son's case could cause him "partiality toward the state by trying to improve his son's situation by supporting the state's case." Defendant is not concerned that the state would "repay" a guilty verdict by helping Mr. Iles' son, but that Mr. Iles might believe that a guilty verdict would enable his son to get favorable treatment from the state.
Mr. Iles stated he would not have any tendencies to lean towards the state or the defendant and there was no reason why he *45 could not give both the defendant and the state a fair and impartial trial. Mr. Iles was not even sure if his son was being prosecuted by the District Attorney's Office. Mr. Iles felt his son's situation would not affect his judgement in the present case and he would not feel uncomfortable sitting as a juror.
Article 797 of the Louisiana Code of Criminal Procedure provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

* * *
No error was committed by the trial court. The theory advanced by the defendant as to Mr. Iles' impartiality is speculative at best. There was no evidence presented that the District Attorney in the present case was prosecuting Mr. Iles' son.
A trial judge is vested with wide discretion in ruling on a challenge for cause, and his ruling should not be disturbed on appeal unless a review of the entire voir dire reveals the trial judge abused his discretion. State v. Cross, 93-1189 (La.6/30/95); 658 So.2d 683. Without any concrete evidence to the contrary, the trial court did not abuse its discretion in ruling as it did.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial court erred in denying his Batson challenge as to Derek Lydell Turner, a prospective juror excused by the state.
During the jury selection process the state excused Derek Turner, a black male, from serving on the jury by use of a peremptory challenge. The defendant objected, and contends the state failed to show any "race-neutral" reasons for the challenge. Defendant's motion for a Batson challenge was denied by the trial court. The court found there was not "anything that would alert the court that there was any exclusion on race and or gender, sex, or whatever. The state within its allowable challenges challenged Mr. Turner. The state does not have to give a reason, it was a peremptory challenge."
The defendant cites the rule that the state's peremptory challenges may not be based solely upon the potential juror's race. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). La.Code Crim.P. art. 795(C). The state acknowledges this rule, but cites State v. Collier, 553 So.2d 815 (La.1989), which held that a defendant has the initial burden to establish a prima facie case of purposeful discrimination. Under Purkett v. Elem, ___ U.S. ___, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination, the burden shifts to the proponent of the challenge to give a race neutral explanation. Once such an explanation is tendered, the trial court must then decide whether the opponent of the peremptory challenge has proven purposeful racial discrimination. Under Elem, the reason will be deemed race-neutral, unless the explanation has an inherently discriminatory intent. Purkett v. Elem, ___ U.S. at ___, 115 S.Ct. at 1771.
In State v. Green, 655 So.2d 272, 287-288 (La.1995), the Louisiana Supreme Court discussed the defendant's burden in establishing a prima facie case of discrimination:
The first step in this process places a burden of production or of "going forward" on the defendant. If the defendant is unable to make out a prima facie case of racial discrimination, the Batson challenge fails and it is not necessary for the prosecutor to articulate "race-neutral" explanations *46 for his strikes. The defendant may offer any facts relevant to the question of the prosecutor's discriminatory intent to satisfy this burden. Such facts include, but are not limited to, a pattern of strikes by a prosecutor against members of a suspect class, statements or actions of the prosecutor which support an inference that the exercise of peremptory strikes was motivated by impermissible considerations, the composition of the venire and of the jury finally empaneled, and any other disparate impact upon the suspect class which is alleged to be the victim of purposeful discrimination. See State v. Collier, 553 So.2d 815 (La.1989); State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), reh'g denied, 488 U.S. 976, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988).
The defendant timely raised a Batson objection to the state's challenge as to prospective juror Turner. State v. Miles, 613 So.2d 1047 (La.App. 3 Cir.1993). Although the mere presence of blacks on a jury does not necessarily defeat a Batson claim, the final composition of the jury being one third black (2 of 6 jurors) does not support an inference of discrimination. See State v. Aubrey, 609 So.2d 1183 (La.App. 3 Cir.1992).

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial court erred in sustaining the state's objection to the defendant's line of questioning.
The defendant argues relevant testimony was excluded when, during defense counsel's questioning of the defendant, the prosecutor objected to counsel's inquiry into whether Gwen Chew had ever made any false accusations in other similar cases, and the trial court sustained the state's objection. Ms. Chew testified that the victim told her the defendant touched her breasts and buttocks and threatened to hurt her if she told anyone. The defendant sought to elicit testimony that Ms. Chew, the person to whom the initial complaint was made to by the victim, testified against her father in a similar case. Defendant argues that her previous experience could have affected her judgment.
The trial court was correct in sustaining the state's objection on the basis of relevancy. Ms. Chew was not the victim. It seems irrelevant as to whether the witness, not the victim, had ever made any false accusations of this nature in the past. Furthermore, any error is harmless in light of the testimony of the victim, as the testimony of the victim alone is sufficient to find the defendant guilty as charged. See, e.g., State v. Guidry, 94-897 (La.App. 3 Cir. 3/1/95); 651 So.2d 458.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 7 & 12
These assignments of error are interrelated. By these assignments of error, the defendant contends the trial court erred in not granting defendant's oral motion for post trial sanity commission and in failing to grant defendant's request for a recess during the habitual offender hearing.
A habitual offender hearing was held on December 12, 1995. After the start of the proceedings, defense counsel made an oral motion to delay the proceedings and asked the court to appoint a post-trial sanity commission to determine the mental competency of the defendant to continue with the proceedings. Counsel for the defendant argued that the defendant's conduct throughout the trial demonstrated an obvious inability to understand the functions of the court and suggests the defendant is unable to understand the advice of counsel and participate in further proceedings in a reasonable manner.
After hearing from both the state and defense counsel, the court gave the following reasons for denying defendant's motion:
BY THE COURT:
I can understand you making the motion Mr. Ellis, but at the same time this is not a hearing whereby the defendant is asked to do anything other than sit in quietness. These crimes that he has committed or has been convicted of those crimes have already beenhe's already been found guilty or pled guilty to those crimes so it's a question of whether or not this is the same Daniel Ray Cyriak as opposed to any *47 other Cyriak. As far as the fingerprint, I think the fingerprint speaks for itself. I don't think any other testimony is needed as to whether or not the fingerprint itself isit's self-explanatory. With that in mind, Mr. Cyriak I've tried to be as patient as I possibly can. And I'll be honest with you I don't need you sitting here if you're going to disturb the proceedings. Now if you've got something [sic] say you need to tell it quietly to your lawyer. But at this point and it's not too much else you can say other than when your turn comes you may get on the stand and deny everything that happened. Other than that there's nothing else to be said. If you force me to I'll have you brought in the back until after the proceedings are over with and I'll do whatever I have to do. But if I can help you I'm going to try to help you. But I can't keep helping you if you're creating a situation whether I've got to almost take you out of this courtroom. With that the motion is denied. And let's proceed.
La.Code Crim.P. art. 642 provides:
The defendant's mental incapacity to proceed may be raised at any time by the defense, the district attorney, or the court. When the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed.
Mental incapacity to proceed exists when a defendant, as a result of mental disease or defect, presently lacks the capacity to understand the proceedings against him or to assist in his defense. La.Code Crim.P. art. 641. The issue of mental incapacity to proceed may be raised at any stage of the proceedings, even after conviction, as a reason why sentence should not be passed. State v. Clark, 367 So.2d 311 (La.1979). It has been held to be "error patent" for a trial court to continue criminal proceedings against a defendant prior to the resolution of the issue of the defendant's mental capacity to proceed. State v. Nicholas, 587 So.2d 16 (La.App. 3 Cir.1991). The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant's mental capacity to proceed. La.Code Crim.P. art. 643. The defendant has the burden of proving by a clear preponderance of the evidence reasonable grounds for the trial judge to believe he is mentally deficient. State v. Vincent, 338 So.2d 1376 (La.1976). "The fact that the defendant's capacity to proceed is called into question does not, for that reason alone, require the trial court to order a mental examination of the defendant." State v. Lott, 574 So.2d 417, 424 (La.App. 2 Cir.1991), writ denied, 580 So.2d 666 (La.1991), affirmed after remand, 27,849 (La.App. 2 Cir. 4/3/96); 671 So.2d 1182.
In the present case, defendant's counsel merely asserted that defendant's "inappropriate conduct" throughout trial indicated the defendant had an obvious inability to understand the functions of the court and is not operating at a level of competence which would enable him to assist counsel. Defense counsel notes the defendant did not understand the concept of identifying someone through their fingerprints, although the defendant had been arrested and fingerprinted several times. Counsel also noted the defendant refused to accept any legal advice he provided.
A trial judge's determination as to a defendant's mental capacity to proceed is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. State v. Bickham, 404 So.2d 929 (La. 1981). A trial judge is not required under La.Code Crim.P. art. 643 to order a mental examination of the defendant unless he has reasonable grounds to doubt the defendant's mental capacity. Where the issue of a defendant's mental capacity to proceed is presented by bare allegations without supporting evidence, the exercise of discretion conferred on the trial judge should not be disturbed. State v. Wilkerson, 403 So.2d 652 (La.1981).
In the present case the trial court denied the defendant's motion to appoint sanity commission, not because insufficient evidence was presented to question the defendant's capacity to proceed, but because the defendant had already been convicted and the remaining proceeding, a habitual offender hearing where the state bore the burden of *48 proof, did not require the defendant's participation.
The Louisiana Supreme Court held in Dugar v. Whitley, 615 So.2d 1334 (La.1993), that a defendant's incompetency did not require abatement of the murder prosecution against him as defense counsel could proceed with the appeal on defendant's behalf despite the trial court's finding of incompetence, post-trial. However, the present case is distinguishable. No determination of incompetency was made in the present case as in Dugar. Further, on appeal, only the record before the court is subject to review. At a habitual offender hearing, as in this case, evidence is still being introduced concerning the defendant's identity and prior convictions.
The trial court stated only that the defendant need not participate in the proceedings, that he was already convicted of the crime charged and the state had the burden of proving he was the same Daniel Ray Cyriak convicted of the prior offenses. The trial court did not resolve the question of the defendant's mental capacity to proceed nor did it address the issue of whether defendant presented enough evidence to warrant the appointment of a sanity commission.
In State v. Carney, 25, 518 (La.App. 2 Cir. 10/13/95); 663 So.2d 470, the court stated that La.Code Crim.P. art. 642 and La.Code Crim.P. art. 643, "... when read in pari materia, implicitly require the trial court to rule on the defendant's motion and determine whether a `reasonable ground to doubt the defendant's mental capacity' exists before proceeding further in the prosecution." Carney, 663 So.2d at 473. The court, citing State v. Wilkerson, 403 So.2d 652 (La.1981), and State v. Folse, 623 So.2d 59 (La.App. 1 Cir.1993), held that although a mental examination is not required in every case where the defendant's mental capacity to proceed is raised, "the record must reflect that the trial court made a determination of whether or not reasonable grounds exist to doubt the defendant's capacity to proceed." Carney, 663 So.2d at 473. In the present case, the record does not reflect that such a determination was made.
The trial court erred in denying defendant's motion as the record does not adequately reflect that the trial court found reasonable grounds to doubt the defendant's mental capacity to proceed. The defendant was never given an opportunity to present evidence on his mental capacity to proceed nor did the trial court take any steps to satisfy itself as to the defendant's mental capacity to proceed.
For the foregoing reasons, these assignments of error are meritorious.

CONCLUSION
The trial court erred in denying defendant's oral motion for post trial sanity commission as the trial court never stated that it found the defendant competent to proceed further, but merely noted that the habitual offender proceedings did not require the defendant's participation. The defendant's remaining assignments of error lack merit.
The defendant's conviction is, therefore, affirmed. His sentence is vacated and set aside and this case is remanded to the trial court for a determination of defendant's mental capacity to proceed in accordance with the views expressed herein.
CONVICTION AFFIRMED; SENTENCE VACATED AND CASE REMANDED.