998 So.2d 800 (2008)
STATE of Louisiana
v.
Harold Dewayne BAYLOR, Sr.
No. KA 2008-141.
Court of Appeal of Louisiana, Third Circuit.
November 26, 2008.
*802 James D. Downs, District Attorney, Numa V. Metoyer, III, Assistant District Attorney, Alexandria, LA, for Appellee, State of Louisiana.
Peggy J. Sullivan, Louisiana Appellate Project, Monroe, LA, for Appellant, Harold Dewayne Baylor, Sr.
Harold Dewayne Baylor, Sr., Winnfield, LA, In Proper Person.
Court composed of ULYSSES GENE THIBODEAUX, Chief Judge, JOHN D. SAUNDERS, and MARC T. AMY, Judges.
SAUNDERS, Judge.
On January 27, 2006, the Defendant, Harold Dewayne Baylor, Sr., was charged by bill of information with attempted carjacking, a violation of La.R.S. 14:27 and La.R.S. 14:64.2, and unauthorized use of a motor vehicle, a violation of La.R.S. 14:68.4. The Defendant was arraigned on February 10, 2006, and he entered a plea of not guilty to all charges.
Jury selection commenced on June 20, 2006. On June 22, 2006, the jury found the Defendant guilty as charged. The Defendant was sentenced on July 28, 2006, to one year in the Louisiana Department of Corrections for attempted carjacking and to three years with the Louisiana Department of Corrections for unauthorized use of a motor vehicle with said sentences ordered to be served consecutively. Defense counsel then gave oral notice of his intent to appeal.
The State filed a bill of information charging the Defendant as a habitual offender on November 14, 2006. On February 26, 2007, the Defendant was found to be an habitual offender. Thus, the sentences that had been previously imposed were vacated, and he was sentenced to serve seventeen years at hard labor on each count, with each count to be served concurrently.
On March 12, 2007, the Defendant filed a pro se Notice of Appeal and Motion for Appointment of Appellate Counsel. The motions were denied on April 4, 2007. The Defendant filed an Application for Post-Conviction Relief seeking an out-of-time appeal on July 17, 2007. That application was denied on August 7, 2007. By order of the trial court issued on October 25, 2007, the Defendant was granted an out-of-time appeal. On November 16, 2007, the Defendant filed a pro se Motion for Appointment of Appellate Counsel. The trial court issued an order appointing the Louisiana Appellate Project to handle the appeal on December 4, 2007.
The Defendant is now before this court asserting three assignments of error. The Defendant contends the following: 1) the *803 evidence did not support convictions for unauthorized use of a motor vehicle or attempted carjacking; 2) the trial court erred in refusing to order a psychiatric evaluation to determine the Defendant's competency; and 3) the trial court failed to sufficiently articulate a basis for the imposition of a seventeen-year sentence as to each count. We find that the assignments of error alleging insufficient evidence to support the conviction for attempted carjacking and the Defendant's competency merit serious consideration. The remaining assignments of error lack merit.

FACTS:
George Drewitt allowed the Defendant to use his truck in exchange for crack cocaine. The Defendant did not return the truck and was stopped by police while in possession of the truck. Upon exiting the truck, the Defendant fled from police. While fleeing from police, the Defendant jumped through the open window of a car being driven by Freddie Butler. The Defendant was subsequently apprehended and convicted of unauthorized use of a motor vehicle and attempted carjacking.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there are three errors patent and an additional issue requiring discussion.

ERROR PATENT NUMBER 1:
The first error patent concerns the habitual offender proceeding. The record does not indicate the Defendant was advised of his right to remain silent, his right to a formal hearing and his right to have the State prove its case against him.[1] In State v. Coleman, 96-525, pp. 12-13 (La. App. 3 Cir. 10/7/98), 720 So.2d 381, 387, this court explained in pertinent part:
Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, in State v. Johnson, 432 So.2d 815 (La.1983), writ granted on other grounds, 438 So.2d 1113 (La.1983); appeal after remand, 457 So.2d 1251 (La. App. 1 Cir.1984), appeal after remand, 471 So.2d 1041 (La.App. 1 Cir.1985), the Louisiana Supreme Court held this statute clearly recognizes the defendant has the right to remain silent, and the statute implicitly provided defendant should be advised by the court of his right to remain silent. The court in Johnson, relying on State v. Martin, 427 So.2d 1182 (La.1983), further stated La.R.S. 15:529.1(D) specifically provides defendant shall be advised of his right to a formal hearing and to demand that the state prove its case.
This court has found such error to be harmless when the defendant is adjudicated a habitual offender after a full hearing, and the defendant does not testify or acknowledge his status as an habitual offender. See State v. Alexander, 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303 and State v. Staton, 05-612 (La.App. 3 Cir. 2/1/06), 922 So.2d 1216, writ denied, 06-1249 (La.11/22/06), 942 So.2d 553. In this case, a full hearing was held, and the Defendant did not testify or acknowledge his status as an habitual offender. Accordingly, we find that the trial court's failure to advise the Defendant of these rights was harmless.

ERROR PATENT NUMBER 2:
Second, we find that the Defendant was provided incorrect information regarding the time limitation for filing an application *804 for post-conviction relief. The court minutes of sentencing do not indicate the Defendant was advised of this time limitation; thus, the sentencing transcript was examined to determine whether the Defendant was so advised. An inspection of the transcript revealed the Defendant was told he has two years from the date of sentencing to file an application for postconviction relief. According to La.Code Crim.P. art. 930.8, the two-year prescriptive period begins to run when the defendant's conviction and sentence become final under the provisions of La.Code Crim.P. arts. 914 or 922. Thus, we instruct the trial court to inform the Defendant of the correct provisions of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings.

ERROR PATENT NUMBER 3:
Third, we find that the sentencing minutes require correction. The court minutes of sentencing state in pertinent part, "Court sentenced accused to be committed to the Louisiana Department of Corrections. Accused to serve 017 Year(s). Sentence is to be served at Hard Labor. Sentence is to run concurrent." The sentencing transcript reveals that the judge imposed a sentence of seventeen years on each count, to run concurrently. Thus, we order the trial court to correct the sentencing minutes to accurately reflect the sentences imposed by the court.

ISSUE REQUIRING DISCUSSION; NO ERROR PATENT OCCURRED:
Finally, we find that there is an issue worth discussing even though no error occurred. The Defendant was sentenced as an habitual offender for his convictions of both attempted carjacking and unauthorized use of a motor vehicle. At the conclusion of the habitual offender hearing, the court stated:
The District Attorney, representing the State of Louisiana  Louisiana, has shown you to be an habitual offender, and I find you guilty of being a second offender upon the proof of the prior felony convictions that were presented by the State at this time. And I hereby vacate previous sentences, and hereby sentence you to seventeen years Department of Corrections as an habitual offender for those offenses.
We find that no error occurred in imposing an enhanced sentence for each offense as the convictions were separate criminal offenses committed at separate times and did not arise out of a single criminal act or episode. See State v. Kennerson, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, and State v. Ward, 94-490 (La.App. 4 Cir. 2/29/96), 670 So.2d 562, writ denied, 97-642 (La.9/19/97), 701 So.2d 165. Furthermore, even if the offenses did arise out of a single criminal act, our supreme court recently held that enhancement of each is permissible:
We therefore hold that the language of LSA-R.S. 15:529.1 contains no prohibition against enhancing multiple sentences obtained on the same date arising out of a single criminal act or episode. Unlike the [State ex rel.] Porter[ v. Butler, 573 So.2d 1106 (La.1991)] court, we find no legislative purpose or policy that is contradicted by failing to read such a prohibition into the statute's language. Nor does a plain reading of the statute generate absurd or unjust results. In clear and unambiguous terms, the statute exposes a person who has previously been convicted of a felony to enhanced penalties for any felony committed after the date of the prior felony conviction. There is no statutory bar to applying the *805 habitual offender law in sentencing for more than one conviction obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode. To the extent that the opinions in Porter and [State v.] Sherer[, 411 So.2d 1050 (La.1982)] are inconsistent with this conclusion, they are overruled.
State v. Shaw, 06-2467, p. 20 (La.11/27/07), 969 So.2d 1233, 1245.[2]

ASSIGNMENT OF ERROR NO. 1:
In his first assignment of error, the Defendant contends the evidence did not support convictions for either unauthorized use of a motor vehicle or attempted carjacking.
In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La. 1984). Additionally, where circumstantial evidence forms the basis of the conviction, the evidence must exclude every reasonable hypothesis of innocence, "assuming every fact to be proved that the evidence tends to prove." La. R.S. 15:438; see State v. Neal, XXXX-XXXX p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). The statutory requirement of La. R.S. 15:438 "works with the Jackson constitutional sufficiency test to evaluate whether all evidence, direct and circumstantial, is sufficient to prove guilt beyond a reasonable doubt to a rational jury." Neal, XXXX-XXXX p. 9, 796 So.2d at 657.
State v. Draughn, 05-1825, p. 7 (La.1/17/07), 950 So.2d 583, 592, cert. denied, ___ U.S. ___, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
At trial, George Drewitt testified that he was new in town and ended up at the Defendant's residence in November of 2005.[3] Drewitt hung out at the Defendant's residence "[r]oughly all day, all night Friday night, Saturday, most of Saturday night." During that time, Drewitt smoked a couple of hundred dollars worth of crack cocaine. Drewitt admitted that during that time he was "pretty high" and allowed the Defendant to use his truck to run errands. Drewitt was questioned about the truck as follows:
Q And, in fact, you rented your truck out for some crack cocaine; didn't you?
A I let him run an errand, or  or go wherever he needed to go. And when he would come back, he would bring me some rocks.
Q You rented your truck to Mr. Baylor?
A Yes.
Q Or to the other individual at the house?
A Mr. Baylor.
Q Okay. And the exchange for that was crack cocaine?
A Yes.
Drewitt testified that the last time he saw the truck was when the Defendant let a neighbor use it. Drewitt testified that he did not "remember having much of a *806 choice in it." Drewitt went on to state, "It was my truck, but it seemed . . . they were more aggressive towards it than I was. I was very timid, and tired, and beat down."
Drewitt then testified that the Defendant eventually forced him to leave the residence, chasing him off with a stick, and the Defendant did not have the truck at that time. Drewitt testified that he was not allowed to wait for the truck at the Defendant's residence or on the street where the Defendant lived, as neighbors would chase him from their yards. Drewitt testified that a neighbor "supposedly" chased him with a gun. This prompted Drewitt to contact police, wherein he also reported that the Defendant had his truck. Drewitt then testified that, "I took it as him being responsible for my truck."
Drewitt testified that he did not make an agreement to allow anyone to keep his truck. He further testified that when he left the Defendant's residence he made it clear that he wanted his truck back and that the Defendant no longer had permission to use it. Drewitt testified that on November 19, 2005, he received a call from the Defendant, who stated he would return the truck in exchange for two hundred dollars.[4]
Officer Scottie Clark was on duty on November 13, 2005. Officer Clark testified that Drewitt approached him in the middle of Gabriel Lane and said he "switched out his truck for drugs earlier that day" to someone called Pluto and wanted to report his truck missing. Drewitt advised Officer Clark that he had seen his truck up the street; however, Officer Clark was not able to locate it. Officer Clark advised Drewitt to file a report for unauthorized use of a vehicle and drove Drewitt home. Officer Clark testified that he never determined the identity of Pluto.
Henry Charles was at the Defendant's residence on November 13, 2005.[5] Charles testified that while he was there, Drewitt gave him permission to use the truck for a couple of hours in exchange for thirty dollars. Charles was supposed to keep the truck for a few hours and drove to Marksville and back. Charles further testified that he returned the truck, along with the keys, to the Defendant and Drewitt was not at the Defendant's residence at that time.[6] Charles testified that he did not have permission to use the truck all week, but he saw the Defendant use the truck during that time. However, Charles testified that he left town the day after he returned the truck. Charles further testified that the Defendant was known as Pluto.
Officer Douglas Prestridge testified that he was on duty on November 19, 2005. On that date, he was informed that a red Dodge Dakota was in the area and an occupant of the truck was attempting to sell it back to the owner. He, along with another officer, attempted to stop the truck, which was occupied solely by the Defendant. The Defendant eventually turned into a driveway, where he exited the truck and began running. Officer Prestridge pursued the Defendant on foot. During the chase, Officer Prestridge observed the Defendant dive through the open passenger window of a white car and *807 start "shoving with the driver." Officer Prestridge testified that it looked like the Defendant was trying to shove the driver out of the car in an attempt to take the car. Officer Prestridge then testified that the driver did not tell him there was a struggle, but did say the Defendant tried to push him.
Officer Jason Neal was working with Officer Prestridge on November 19, 2005. Officer Neal testified that he chased the Defendant, who eventually dove into the open passenger window of a car and struggled with the driver. The car then stopped. When Officer Neal approached the car, Freddie Butler, the driver of the car, was fighting with the Defendant. Officer Neal subsequently testified that the momentum from the Defendant diving through the window could have caused the contact between the driver and the Defendant. Officer Neal testified that, as far as he was aware, the Defendant identified himself as Pluto.
Butler testified that on November 19, 2005, he was turning onto Augusta Street when he saw two police officers chasing someone. Butler testified that as he was driving, the Defendant jumped head first into the open passenger window of his car and said, "Go, go, go." When the Defendant said "go," Butler testified that he put the car in park, got out of the car, opened the door, and pulled the Defendant, whose feet were still hanging out the window, halfway out of the car. Butler testified that the Defendant never laid a hand on him, did not wrestle with him, did not have a weapon, and did not threaten him. Additionally, Butler testified that the Defendant never attempted to get his wallet.

UNAUTHORIZED USE OF A MOTOR VEHICLE
The Defendant was convicted of unauthorized use of a motor vehicle, which is "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently." La.R.S. 14:68.4.
In State v. Joseph, 05-368 (La.App. 5 Cir. 1/17/06), 921 So.2d 1060, the fifth circuit discussed unauthorized use of a motor vehicle as follows:
This Court, while acknowledging that there are few published cases interpreting La. R.S. 14:68.4, has found the jurisprudence interpreting La. R.S. 14:68 (prohibiting the unauthorized use of a movable) instructive since the two statutes proscribe the same conduct. See: State v. Varnado, 01-367, p. 4 (La.App. 5th Cir.9/13/01), 798 So.2d 191, 193; State v. Spencer, 97-811, pp. 6-7 (La. App. 5th Cir.1/27/98), 707 So.2d 119, 120.
In State v. Bias, 400 So.2d 650, 652-653 (La.1981), the Louisiana Supreme Court clarified the meaning of La. R.S. 14:68 as follows:
A person commits the crime of unauthorized use of a movable when he either takes or uses another's property without the owner's consent or by means of fraudulent practices. R.S. 14:68, although not requiring that a person act with an intent to deprive the owner permanently of his property, must reasonably be construed to require the existence of fraudulent intent. See: State v. Kelley, 241 La. 224, 128 So.2d 18 (1961). If the statute were construed otherwise, every breach of a rental contract would be included within the reach of the statute, and the Legislature certainly did not intend such a result.
. . . .
R.S. 14:68 may be violated by a taking or use either without the consent *808 of the owner or by means of fraudulent conduct, practices, or representations.
. . . .
. . . [W]e construe the present statute proscribing unauthorized use of a movable as requiring a showing of mens rea or criminal intent, since the "evil" state of mind of the actor normally distinguishes criminal acts (punishable by the state alone) from mere civil wrongs (actionable by private individuals against one another).
Id. at 1063-64.
In brief to this court, the Defendant asserts that the entire case rested on Drewitt's questionable credibility. The Defendant asserts that Drewitt conveniently omitted the terms of the loan of his truck and never testified that it was for a specified time or when he expected it to be returned. The Defendant points out that Drewitt never testified that the truck was kept longer than the agreed upon time and, when Drewitt initially talked to police, the Defendant did not have Drewitt's truck.
The Defendant further points out that Drewitt testified that a neighbor "supposedly" chased him with a gun. The Defendant asserts that it would seem Drewitt would be able to say whether someone chased him with a gun, and if he had been chased with a gun, he would have reported it to police. The Defendant asserts that he did not initially take the truck, so the question then becomes, was there an agreement as to when it was to be returned and, if so, what was the agreement.
The Defendant then asserts that if Drewitt did not testify to or perhaps recall the agreement, the State did not meet its burden of proof. The Defendant further argues that his request for money in exchange for the return of the truck did not indicate a taking. The Defendant asserts that in light of the events surrounding the loan of the truck, the request for money is far more indicative of the use of the truck as collateral so that Drewitt would be fronted drugs.
We find that the Defendant had Drewitt's permission to use the truck while Drewitt was at the Defendant's residence; however, Drewitt testified that when he was forced to leave the Defendant's residence, he made it clear that he wanted his truck back and the Defendant was no longer permitted to use it. Charles returned the truck to the Defendant and later saw the Defendant drive the truck. The Defendant then called Drewitt on November 19, 2005, and stated he would return the truck if Drewitt paid him two hundred dollars. Additionally, Drewitt was driving the truck when he encountered the police and fled the scene upon exiting the vehicle. We find that flight by the Defendant was indicative of his guilty knowledge that he was not authorized to use the truck. See State v. Dunbar, 07-219, p. 8 (La.2/26/08), 978 So.2d 899, 904.
The verdict indicates the jury chose to believe Drewitt's testimony that the Defendant did not have permission to use the truck after Drewitt left the Defendant's residence and that credibility determination should not be second guessed by this court. State v. Hatch, 06-1587 (La.App. 3 Cir. 6/6/07), 964 So.2d 394. Based on the evidence presented, we find that the State proved beyond a reasonable doubt that the Defendant drove Drewitt's truck without Drewitt's permission. Accordingly, the Defendant's conviction for unauthorized use of a motor vehicle is affirmed.

ATTEMPTED CARJACKING
The Defendant was also convicted of attempted carjacking. "Carjacking is the intentional taking of a motor vehicle, as defined in R.S. 32:1(40), belonging to *809 another person, in the presence of that person, or in the presence of a passenger, or any other person in lawful possession of the motor vehicle, by use of force or intimidation." La.R.S. 14:64.2(A).
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
La.R.S. 14:27(A).
To support a conviction for attempted carjacking the State must prove that the Defendant had the specific intent to take Butler's car and did or omitted some act toward accomplishing his goal. "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La.R.S. 14:10(1); [State v.] Neal, XXXX-XXXX p. 10, [La. 6/29/01),] 796 So.2d [649] at 657." Draughn, 950 So.2d at 592-93.
In State v. Bean, 04-1527, pp. 9-10 (La. App. 1 Cir. 3/24/05), 899 So.2d 702, 709, writ granted on other grounds, 05-1106 (La.3/8/06), 925 So.2d 489, writ denied, 05-1106 (La.11/3/06), 940 So.2d 652, the first circuit discussed taking in the context of theft as follows:
The factual issue of whether there is a "taking" for purposes of a theft concerns whether the offender exerts control over the object adverse to or usurpatory of the owner's dominion. State v. Victor, 368 So.2d 711, 714 (La.1979). Under the jurisprudence, it is not always necessary for goods to actually be removed from the store in order to form the basis of a conviction for theft. State v. White, 404 So.2d 1202, 1204 (La.1981); Victor, 368 So.2d at 714-15 ("taking" means an intent to usurp or negate the owner's dominion); State v. Wilson, 30,880 (La. App. 2nd Cir.8/19/98), 718 So.2d 546, 549; State v. Brown, 481 So.2d 665, 667 (La.App. 1st Cir.1985), writ denied, 488 So.2d 198 (La.1986) (exercise of wrongful dominion or unauthorized control).
The Defendant asserts the State failed to prove he used force or intimidation and that he intended to take Butler's car. There are few reported cases involving attempted carjacking. In State v. Singleton, 01-282 (La.App. 4 Cir. 11/7/01), 801 So.2d 1150, writ denied, 01-3170 (La.9/20/02), 825 So.2d 1168, Lind, the owner of the vehicle, testified that the defendant grabbed her purse and entered her vehicle as she was exiting the vehicle. The defendant then exited the vehicle, and demanded that she give "it" to him. Lind assumed that because the car key was the only thing she had, that the key was the "it" to which the defendant referred. The court found that it could be inferred from the circumstances of the encounter that the defendant possessed the specific intent to take Lind's car, and did an act in furtherance of the offense to support the conviction for attempted carjacking.
In State v. Jones, 33,657 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, writ denied, 00-2779 (La.6/29/01), 794 So.2d 825, the defendant entered the passenger side of a van parked at a grocery store and told the owner to drive or be killed. A struggle ensued and the owner of the vehicle fell out of the van. The owner's wife emerged from the store and began to struggle with the defendant, who got into the driver's seat of the van and attempted to drive off. The wife managed to take the keys from the ignition and the defendant fled the scene. The court found the evidence was sufficient to support the defendant's conviction for attempted carjacking.
*810 In the case at bar, the Defendant dove head first through the open passenger window of Butler's car and told Butler, "Go, go, go." Butler testified that the Defendant did not wrestle with him, did not have a weapon, did not threaten him, and did not attempt to take his wallet. Additionally, the Defendant's feet were never inside the car. Officer Prestridge testified that it appeared to him that the Defendant attacked Butler and was trying to take the car. Officer Neal testified that the Defendant struggled with Butler; however, the momentum from the Defendant diving through the window could have caused the contact between Butler and the Defendant.
The Defendant contends that the evidence against him in this regard is minimal and invites this court to find that Butler, the owner of the car of the alleged attempted highjacking, would be in a superior position to ascertain the intent of the Defendant than that of two chasing police officers. Further, the Defendant points out that Officer Neal conceded that the Defendant's momentum could have caused the contact between he and Butler.
In declining this invitation, we note the recent case of State v. Ordodi, 06-207, pp. 14-15 (La.11/29/06), 946 So.2d 654, 662, wherein our supreme court overturned this court's reversal of a conviction by stating, "[i]n reviewing the evidence of the defendant's actions . . . we cannot say that the jury's determination is irrational under the facts and circumstances presented to them. . . ." Here, we are unable to hold that the jury was "irrational" in choosing to favor the view of the two police officers over that of Butler. While Butler, admittedly, had a better vantage point from which to view the actions of the Defendant, the jury was able to view the witnesses live, whereas we are limited to a reading of a cold transcript of the proceeding. As such, the jury had a better vantage point from which to weigh the testimony of the witnesses, and we are directed to uphold such findings if they are not irrational. Thus, the Defendant's conviction for attempted carjacking is affirmed.

ASSIGNMENT OF ERROR NO. 2:
In his second assignment of error, the Defendant contends the trial court erred in refusing to order a psychiatric evaluation to determine his competency.
On June 20, 2006, court convened and the parties were informed that, because of the late hour, jury selection would commence the following morning. Defense counsel informed the trial court that the Defendant would like to make a motion. The following exchange then occurred:
BY THE DEFENDANT:
Yeah, I  I'm, right now, on mental evaluation at  at Forcht Wade. I  I  my last  last  what it was  what they  my  my sanity hearing, I went  I  I went to it, and they granted me. And I  I was on medicine, and I really don't understand what they doing, and I don't think that, uh 
BY THE COURT:
Sir, that's a motion that  something you need to discuss with your counsel,. . .
BY THE DEFENDANT:
I did.
BY THE COURT:
. . . and your counsel will be able to, if he deems fit, to file whatever motions he deem [sic] necessary; but that's not something I cannot, in exparte [sic] fashion, rule one way or the other.
BY THE DEFENDANT:
I mean, I take medicine  I take medicine for mental health, and  and they  I  I'm  I'm  I'm paranoid schizophrenia, and  and I'm  I'm  I'm  I'm bipolar. And I don't understand why I'm *811 doing for running from the police, they tell me carjack
. . . .
BY THE COURT:
That's it. That's something . . .
. . . .
BY THE COURT:
. . . you discuss with your attorney. Mr. Hickman, you handle it as you wish. Tomorrow morning, at nine o'clock, we start picking a jury.
The following day, defense counsel informed the trial court that the Defendant instructed him to file a motion for sanity commission and that he would not be filing the motion. Defense counsel then stated he had no good faith belief that the Defendant was not able to understand the nature of the proceedings against him or assist counsel. Defense counsel additionally told the trial court that the Defendant no longer wanted to be represented by him. The trial court would not relieve defense counsel of his duties. The trial court then stated the following regarding the motion for sanity commission:
And as to the sanity motion that you're arguing to me, one has not been formally filed; therefore, it is not my consideration at this time. It's not something for me to deliberate. And, so, I  it's not filed; it doesn't exist. I will presume that this man is capable of proceeding to trial, because I have no evidence and none is being presented to the contrary.
Jury selection followed and verdicts were returned on June 22, 2006.
With the help of inmate counsel, the Defendant filed a pro se "Motion for Psychiatric Examination" on February 21, 2007. Therein, the Defendant asserted that he discussed with his appointed attorney the possibility that he suffered from a serious psychological disturbance, which his family could validate, and that his ability to understand the seriousness of the offenses should have been examined. The Defendant further asserted that he could not understand the proceedings against him or assist in his defense as a result of mental disease or defect and an "acquittal was entered into the record of a prior unrelated offense."[7]
Court convened on February 26, 2007, in the Defendant's absence. At that time, the State informed the trial court that the Defendant filed a motion for a sanity commission. Defense counsel informed the trial court that the motion was a pro se motion. The trial court dismissed the motion, stating, "I'm not saying that the motion itself may not have any merit, but I want it filed only by counsel of record." Defense counsel was given the opportunity to adopt the Defendant's motion. Defense counsel stated that, based on his conversations with the Defendant, he did not think the Defendant was incompetent; therefore, he had no basis to file such a motion. The trial court then stated, "Okay, well, let's put that on the record, because I just said what I will do with these pro se sanity motions."
Subsequently, in a sidebar conference, the following occurred:
BY MR. BUCK:
Judge, Harold is  is crazy as looney. He's a four-time loser. And I got . . . (Unintelligible) . . . prints on him. I've been trying to get Harold to accept seventeen years flat.

*812 BY THE COURT:
But if he's crazy, I can't give him 
BY MR. HICKMAN:
He's not craze [sic] Judge.
BY THE COURT:
I don't want to give him 
BY MR. HICKMAN:
It's an act he puts on. He understands perfectly what's going on.
BY THE COURT:
He understands.
BY MR. BUCK:
No, Judge, he's playing games.
BY THE COURT:
He's playing games, okay. We'll [sic] I know 
BY MR. BUCK:
Yeah.
BY THE COURT:
That's why I know what to do with this motion.
The Defendant was brought to the courtroom, and he told the trial court that he had his inmate lawyer file a motion regarding sanity. Defense counsel informed the Defendant that the trial court had denied the motion. The Defendant then stated, "Oh. Didn't let me  [.]" The trial court informed the Defendant that the motion had been summarily denied and proceeded with the habitual offender hearing.
In brief to this court, the Defendant asserts that after he orally requested a sanity commission be appointed, the trial court should have further investigated the issue despite defense counsel's refusal to join in the motion. The Defendant further asserts he was not allowed to explain the nature of his complaints. The Defendant notes that the trial court denied the motion because no formal motion had been filed. The Defendant asserts that a written motion is not required by La.Code Crim.P. art. 642; therefore, the failure to present a written motion should not have barred the trial court's consideration of the issue. The Defendant additionally notes the trial court did not inquire as to when or by whom he was diagnosed as a paranoid schizophrenic or what medication he was taking. The Defendant points out that his written "Motion for Psychiatric Examination" was denied in his absence based on the fact that the trial court would not consider such a pro se motion.
The Defendant asserts that several red flags should have alerted the trial court to the necessity of inquiring into his ability to understand the proceedings and assist counsel, including the following:
1) Immediately after the jury returned its verdict and was polled, the Defendant asked twice, "Can I testify?" and
2) In his "Motion for Psychiatric Evaluation," the Defendant asserted he did not believe he had the capacity to understand the proceedings as a result of mental disease or defect and that a previous acquittal was entered on a prior unrelated offense.
The Defendant points out that the State said he was "crazy as looney." The Defendant asserts that this comment shows something more was going on in this case than the record reflects. He then asserts it was incumbent upon the trial court to determine if he was competent to proceed.
In State v. Cyriak, 96-661 (La.App. 3 Cir. 11/6/96), 684 So.2d 42, the defendant argued that the trial court erred in not granting his oral motion for post-trial sanity commission and in failing to grant his request for a recess during the habitual offender hearing. At the start of the habitual offender proceedings, defense counsel made an oral motion to "delay proceedings and asked the trial court to appoint a *813 post-trial sanity commission" to determine the mental competency of the defendant to continue the proceedings. Id. at 44. Counsel argued that the defendant's conduct throughout the trial demonstrated an obvious inability to understand the functions of the court and suggested the defendant was unable to understand the advice of counsel and to participate in the proceedings. The trial court denied the motion because the defendant would not be asked to participate in the habitual offender proceedings. This court found the trial court denied the defendant's motion "not because insufficient evidence was presented to question the defendant's capacity to proceed, but because the defendant had already been convicted and the remaining proceeding, a habitual offender hearing where the state bore the burden of proof, did not require the defendant's participation." Id. at 47 This court then set forth the following:
The Louisiana Supreme Court held in Dugar v. Whitley, 615 So.2d 1334 (La. 1993), that a defendant's incompetency did not require abatement of the murder prosecution against him as defense counsel could proceed with the appeal on defendant's behalf despite the trial court's finding of incompetence, post-trial. However, the present case is distinguishable. No determination of incompetency was made in the present case as in Dugar. Further, on appeal, only the record before the court is subject to review. At a habitual offender hearing, as in this case, evidence is still being introduced concerning the defendant's identity and prior convictions.
The trial court stated only that the defendant need not participate in the proceedings, that he was already convicted of the crime charged and the state had the burden of proving he was the same Daniel Ray Cyriak convicted of the prior offenses. The trial court did not resolve the question of the defendant's mental capacity to proceed nor did it address the issue of whether defendant presented enough evidence to warrant the appointment of a sanity commission.
In State v. Carney, 25,518 (La.App. 2 Cir. 10/13/95); 663 So.2d 470, the court stated that La.Code Crim.P. art. 642 and La.Code Crim.P. art. 643, ". . . when read in pari materia, implicitly require the trial court to rule on the defendant's motion and determine whether a `reasonable ground to doubt the defendant's mental capacity' exists before proceeding further in the prosecution." Carney, 663 So.2d at 473. The court, citing State v. Wilkerson, 403 So.2d 652 (La.1981), and State v. Folse, 623 So.2d 59 (La.App. 1 Cir.1993), held that although a mental examination is not required in every case where the defendant's mental capacity to proceed is raised, "the record must reflect that the trial court made a determination of whether or not reasonable grounds exist to doubt the defendant's capacity to proceed." Carney, 663 So.2d at 473.
In the present case, the record does not reflect that such a determination was made.
Id. at 48.
In Cyriak, 684 So.2d 42, this court went on to find that the trial court erred in denying the defendant's motion, as the record did not adequately reflect that the trial court found reasonable grounds to doubt the defendant's mental capacity to proceed. This court further noted that the defendant was never given an opportunity to present evidence regarding his mental capacity to proceed and the trial court did not take any steps to satisfy itself as to the defendant's mental capacity to proceed.
*814 In the case at bar, the trial court never considered the oral motions made by the Defendant prior to trial or the pro se motion filed shortly before the habitual offender hearing. The trial court denied or dismissed the motions because they were orally made and were filed pro se. We find that there is nothing in La.Code Crim.P. art. 641, et seq. that requires a motion regarding sanity to be made in writing or solely by defense counsel and in State v. Melon, 95-2209 (La.9/22/95), 660 So.2d 466, the supreme court directed lower courts to consider and accept filings from defendants represented in a context that is preverdict whenever it would lend itself to confusion at trial. We further note that the trial court never gave the Defendant an opportunity to present evidence regarding his capacity to proceed and never made a determination of whether reasonable grounds existed to doubt the Defendant's capacity to proceed. Thus, the trial court erred in denying or dismissing the Defendant's oral and pro se motions.
Accordingly, we find that this matter should be remanded to the trial court for an evidentiary hearing, wherein the trial court is to determine whether there were reasonable grounds to doubt the Defendant's capacity to proceed to trial and sentencing.

ASSIGNMENT OF ERROR NO. 3:
In his third assignment of error, the Defendant contends the trial court failed to sufficiently articulate a basis for the imposition of a seventeen-year sentence as to each count.
The Defendant argues that the trial court did not comply with La.Code Crim.P. art. 894.1. He asserts that during the initial sentencing hearing, the trial court indicated there was a pre-sentence investigation report. However, the Defendant states that he received significantly harsher sentences and, at the habitual offender hearing, no basis for those sentences was given. The Defendant further asserts that he benefited by the State's decision to prove he was a second rather than a fourth offender, but that did not relieve the trial court of its duty to set forth the reasons for imposing the sentences at issue.[8] We find that the Defendant has not alleged or argued that the sentences imposed in the case at bar are actually excessive, but merely asserts the trial court should have given reasons for imposing the sentences.
The Defendant did not file a motion to reconsider the sentence; therefore, his claims are barred by La.Code Crim.P. art. 881.1. State v. Hargrave, 05-1027 (La. App. 3 Cir. 3/1/06), 926 So.2d 41, writ denied, 06-1233 (La.11/22/06), 942 So.2d 552. Accordingly, this assignment of error will not be considered.

DECREE:
This court found three errors patent. The first is that the record does not indicate the Defendant was advised of his right to remain silent, his right to a formal hearing, and his right to have the State prove its case against him during the habitual offender proceeding. We find that error harmless. The second is that the Defendant was provided incorrect information regarding the time limitation for filing an application for post-conviction relief. We therefore order the trial court to inform the Defendant of the correct provisions of article 930.8 by sending appropriate *815 written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. The third is that the sentencing minutes require correction. Thus, we order the trial court to correct the sentencing minutes to accurately reflect the sentences imposed by the court, a sentence of seventeen years on each count, to run concurrently.
For the above reasons, the Defendant's convictions and sentences for unauthorized use of a motor vehicle and attempted carjacking are conditionally affirmed on the evidence in the record on appeal. However, the case is remanded to the trial court for an evidentiary hearing to determine whether there were reasonable grounds to doubt the Defendant's capacity to proceed.
If the trial court finds there were not reasonable grounds to doubt the Defendant's capacity to proceed, the trial court is instructed to inform the Defendant of the correct provisions of article 930.8 by sending appropriate written notice to the Defendant within ten days of the rendition of this opinion and to file written proof that the Defendant received the notice in the record of the proceedings. Additionally, the trial court is ordered to correct the sentencing minutes to accurately reflect the sentences imposed by the trial court.
If the trial court finds there were reasonable grounds to doubt the Defendant's capacity to proceed, the trial court should comply with La.Code of Crim.P. art. 643, et seq. If the trial court finds the Defendant did not have the capacity to proceed, the Defendant's convictions and sentences for unauthorized use of a motor vehicle and attempted carjacking are reversed, vacated, and set aside and the trial court is instructed to comply with the mandates of La.Code Crim.P. art. 648.
The Defendant may appeal from any adverse ruling of the issue of capacity to proceed, and in the absence of any such appeal, this court affirms the Defendant's convictions and sentences.
CONDITIONALLY AFFIRMED, REMANDED WITH INSTRUCTIONS.
THIBODEAUX, Chief Judge, dissents and assigns written reasons.
THIBODEAUX, Chief Judge, dissenting in part.
In affirming the Defendant's conviction for attempted carjacking, the majority errs and stands Jackson v. Virginia's doctrine of insufficiency review on its head. No rational trier of fact could have found beyond a reasonable doubt that the Defendant had the specific intent to commit carjacking and performed an act toward accomplishing that goal.
State v. Mussall, 523 So.2d 1305 (La. 1988) eruditely explains:
The Jackson v. Virginia [sic] doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case. . . . First, a review of a criminal conviction record for sufficiency of evidence does not require a court to "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt [sic]'" Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.

*816 The principal criterion of a Jackson v. Virginia review is rationality. This is because under Winship [sic] and Jackson [sic] Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson [sic] methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
The Jackson [sic] doctrine or methodology is a compromise between the one extreme that maximizes the protection against the risk that innocent persons will be erroneously convicted by appellate replication of criminal trials and the other extreme that places the greatest faith in the ability of the triers of facts to produce just verdicts. Not only did the Supreme Court abjure any requirement that a reviewing court retry the issue of guilt, but it also rejected all forms of limited review under which a partial or one-dimensional view of the evidence is accepted as an index of its actual probative value. The Jackson [sic] doctrine does not permit the reviewing court to view just the evidence most favorable to the prosecution and then to decide whether that evidence convinced it beyond a reasonable doubt. Nor does it require a court to decide whether, based on the entire record, the average rational trier of fact could be convinced of guilt beyond a reasonable doubt.
Id. at 1309-10 (footnote omitted).
In invoking the wisdom of Professor Wright, the important points are that "the court is not to substitute its judgment of what the verdict should be for that of the jury, but that at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." Id. at 1311 (quoting 2 CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE, CRIMINAL 2d, § 467 (2d ed.1982)). What the majority has decided is exactly what is prohibited in a sufficiency of the evidence review: it has allowed the jury to speculate on evidence so skimpy and factually tenuous that any rational person would have a reasonable doubt. The paucity of evidence borders on the embarrassing.
Louisiana Revised Statutes 14:64.2(A) defines carjacking as "the intentional taking of a motor vehicle . . . belonging to another person, in the presence of that person . . . by use of force or intimidation." The evidence fails to disclose a "taking." The Defendant simply jumped head first into the open passenger window of a vehicle being driven by the alleged victim, Mr. Butler. The Defendant never took control of the car. How could he commandeer the car when his feet were still hanging out of the window? No rational juror could find beyond a reasonable doubt that this act *817 tended "directly toward the accomplishing" of carjacking. See La.R.S. 14:27(A).
Moreover, the alleged victim, Mr. Butler, testified that the Defendant never threatened him, did not wrestle with him, had no weapon and never laid a hand on him. The majority concedes this. How could any rational juror, based on this evidence, find that force or intimidation was used?
The majority relies on the police officers' testimony. That is unpersuasive. Officer Prestridge said that it appeared the Defendant was attacking Mr. Butler. Officer Neal conceded that the contact between Mr. Butler and the Defendant may have been incidental. Thus, a police officer's subjective feelings trump the objective assertions of a victim. How rational can that be? I realize justice is sometimes blind, but "such blindness does not include a state of insensibility to that which is so obvious." Trahan v. Superior Oil Co., 204 F.Supp. 627, 632 (W.D.La.1962), aff'd, 322 F.2d 234 (5th Cir.1963).
The majority eviscerates the function of a reviewing court and relinquishes our court's authority completely to the emotional vicissitudes of a jury's discretion; the effect is that such discretion is completely unfettered. As the majority states, "the jury was able to view the witnesses live whereas we [the appellate court] are limited to a reading of a cold transcript of the proceeding." Consequently, "the jury had a better vantage point from which to weigh the testimony of the witnesses. . . ." While factional findings and credibility determinations are within the province of the factfinder and are entitled to deference, they are not entitled to infallible omniscience. Discretio est discernere per legem, quid sit justumunlimited discretion does not exist in the law!
The majority's reliance on State v. Ordodi, 06-207 (La.11/29/06), 946 So.2d 654, is equally unpersuasive. Ordodi did not articulate any new principles of law, nor does it compel the affirmance of a conviction regardless of the featherweight nature of the evidence. Ordodi simply concluded that the supreme court could not "say that the jury's determination [was] irrational under the facts and circumstances presented to them." Id. at 662 (emphasis added). In contrast, the jury's determination in convicting the Defendant of attempted carjacking was irrational and legally insupportable.
For the foregoing reasons, I dissent.
NOTES
[1] Just prior to the trial judge announcing that he found the Defendant to be a second offender, he stated that the Defendant had been apprised of all of his rights; however, our review of the transcript did not reveal any such colloquy.
[2] Shaw is retroactively applicable to all non-final convictions. Id. at 1248 (n. 9).
[3] Drewitt had previously been convicted of possession of CDS Schedule III, two offenses involving paraphernalia, and felony theft.
[4] Drewitt testified that the Defendant had his cell phone and used it to call him.
[5] Charles was incarcerated at the time of trial due to a probation violation and had previously been convicted of possession with intent to distribute CDS Schedule II.
[6] Charles also testified that the Defendant let him use a cell phone, which was found inside the truck.
[7] In brief to this court, the State asserts the Defendant never filed a Motion to Appoint Sanity Commission during his previous six felony prosecutions from 1985 to 2006. This information will not be considered by this court because it is not contained in the record.
[8] Prior to the commencement of the habitual offender hearing, the State asserted it would prove the Defendant was a second offender and give him "seventeen years flat" instead of proving he was a fourth offender. Defense counsel indicated he had no problem with proceeding in that manner.